Okay, the next case on the docket is 513-101 Westra v. Westra. Counselor, you're going to proceed. I am. Thank you, Mr. Porter. Mr. Stiger. When John and Kathy got a divorce in this case, they struck a deal. And that deal is handwritten. It's part of the judgment. The deal related to some investment property that they had acquired during the marriage that was a professional building. And that professional building was on Shmael. So you'll hear references to Shmael throughout the record. But the important thing about it was that John, who was a lawyer, could get the property. But there were certain conditions. The first condition was that he had to provide an annual accounting. The second condition is that there was a deadline. That accounting was from a gross income as well as expenses. And this deadline was February 15th. It wasn't April 15th. It wasn't a suggested deadline. It wasn't anything that was unclear. And the purpose behind it was to figure out how much money would be left over in order to assess child support. The child support would be 25% until the middle son graduated from high school. Then it would be 20% of that net income. And that makes sense because it was an income-producing property and would have been included in child support calculations. What was a concession by the mother was that Kathy said, You can apply the net income from this building, this business, towards college expenses. And then once we know how much that is, the remainder would be then used to determine that child support. John didn't do it. February 15th rolled by and he provided no accounting. Beyond that, he didn't provide an accounting. It became an annual ritual. And in the record you'll see letters from Kathy to John saying, John, it's April 2006 or it's April 2007 or I still haven't gotten that accounting. And what John eventually did, either during the trial or at one point, he would send a Schedule E from his tax return and say, here's the accounting. You went back to the trial court and what happened? We went to the trial court. We actually had it transferred because the original trial court was in the Chicago metropolitan area and we had it transferred here. When we got it here in front of Judge Sweet, the judge at trial said basically that was a sufficient accounting. And what we're saying is that that's against the manifest way of the evidence. So, Mr. Ferencamp, are you saying that whether or not the Schedule E suffices, that he was not supplying the Schedule E even? He wasn't even doing that on time. I don't know how. I don't believe it. When you say on time, was he giving it to her when he filed his tax returns? Or you're saying it just wasn't given anything for periods of time? I'm saying he did provide Schedule E at different times, but he never provided it on time, never provided any accounting on the deadline. Okay, so that's one issue. But then how is the Schedule E insufficient, in your opinion? Well, a couple of examples. One example would be, this is a practicing lawyer who's been practicing for 36 years. If he was representing someone in an estate who had to provide an accounting, he wouldn't tell them it's fine just to provide them with the Schedule E from investment property. He would say, you've got to show all the income, but detail or document the expenses. And why it's important here is that one of the expenses that he listed was a management fee that he never had claimed before that he paid to himself. It was clearly him carving out income, calling it an expense, giving it to himself, and by way of example on his 2008 tax return, he didn't even claim it as income. So he was able to take a management fee of $7,587 on a Schedule E claimant, not saying to whom he paid it, and then not show it as income on his tax return. So if he saw his tax return, it wouldn't be reflected as income to him. It's reflected only as an expense. So she'd have no way of knowing to whom it is. And he said, that's all you get. I mean, he eventually admitted that's what he did. And he did it in a letter. He said, the reason I did this, I need additional money to pay back the loan I had to incur to pay your lawyer for the last go-around. So at times, he would admit that he was taking this and not crediting his child support because he had to pay her lawyer fees. And was he ordered to pay her lawyer? Yeah. Okay, so he was. Yes, I'm sorry. That's okay. So the problem that's created is, can any reasonable person believe that a lawyer practicing for 25 to 36 years had no idea what an accounting was? You're not talking, though, about needing a CPA to do it? No. That's what I've been trying to figure out. Oh, I'm sorry. What would be adequate? What we have people do sometimes, and a lot of times in divorce cases, you show your income, then you show your expenses. And if it's an unusual expense, you provide a receipt. For instance, if there's some repair work that has to be done, just so you know he's not paying his wife or son or stepson to do it, just show us who you paid it to. So he provided nothing other than just the line item expenses? He never saw any checks or receipts or anything? No. And the other problem is, I mean, can any reasonable person believe that a lawyer practicing that long doesn't know what an accounting is? Can a reasonable person believe that a lawyer who would give advice to people would say that February 15th was a mere suggestion and he could do it whenever he pleases? It's very interesting, the correspondence that goes back and forth between them, because in it he basically says it's none of her business. And that the only reason this is in here was to determine college expenses. Well, no, there was child support in there, too. And as a result, either by deferring, putting her off, or not providing information, she didn't get the child support she should have gotten at the time, which is supposed to go to the child. She really didn't know what he was paying for college. I mean, every once in a while he'd say, look, I had to borrow money to do this, but it wasn't something you'd expect. People don't trust each other in divorce cases. That's why we put this in writing. You know, we used to say the old relationship in the Cold War was trust but verify. Well, that's all we wanted was verification. And he gave her less than he knew he should have. And a reasonable person looking at it would say, well, he would know better than that. How was she supposed to tell? She's not supposed to read his mind. She didn't have access to the underlying documentation. He just says, take it on my trust. The only way that we ever got this information, ultimately, was we had to file something in court. I substituted his counsel for Judge Levy, who was in private practice at the time and had filed it, I believe, in 2008. But up until that time, he was able to avoid paying anything towards support by just stonewalling it and saying, here, this is good enough. Can a reasonable person say that's good enough, knowing that he knows what he knows? Was there any prohibition about selling the rental property? There's nothing in writing about selling the property. The intent was, it was going to be used, I believe it even came out in testimony, that property was going to be used as a means of financing the kids' college. They had three boys. They were lucky, and a lot of them would get scholarships and grants and loans that were a nice package. And much of it, and you can see in some of the exhibits, was because they listed my client as the home parent. So when they do their FAFSA form, they would get a lot of financial aid. But my client didn't get an accounting. She didn't know how much the husband was paying from the income because he never told her, for child support. So she didn't know that either. It was basically, I'm telling you this is what it is, and this whole accounting thing is not that big a deal. But it is a big deal. And we have a problem with the court's decision on it because the court basically concluded that the Schedule E was enough and that February 15th wasn't the deadline. And things that normal, reasonable people looking at, people on the street would say, well a lawyer would know what an accounting means. I mean, I go to a lawyer for advice on accounting. How come he can give that advice to other people? He won't take it himself. It's stunning to think that he came in and he said things that he did in writing and expected that it would be looked upon as not in violation of the court order. We provided tables as to what we thought the difference would be because we did get ultimately a lot of information. So did you believe that you adequately were able to prove what he should have been paying? And that was based on discovery? That was put into evidence? Yes. We never know for sure, especially in these cases because there's always a measure of follow-up. But there was some late discovery in it. But there was discovery. There was compliance. There was provision of some tax returns. So there was documentation provided. And from that we calculated, and I think we provided some tables on it. But even at the time, to say that the February 15th wasn't clear, it just boggles the mind. I mean, he would even say, he'd send her a letter saying, I submit that your demand for information is inappropriate. That's one of the exhibits. I resent your meddling in my business. Haven't you done enough already to damage my life? My assets are my business. She had to do this annual begging routine to do what he should have done because the judge said it was so, or because it was right, or because he struck a deal. She shouldn't have to have begged every year to do it. And then he would say, I'll send you a Schedule E when I do my taxes. There is no other accounting kept on this building. Well, that's like saying in an estate there is no other accounting. You create it. You actually have to get the bills. What does he give to his accountant? I mean, he has to have something, and all he has to do is show it. Show us what you got so we can trust you because we don't trust you without it. And that's unfortunately one of the things that happened in divorce cases. You know, he would tell her that he doesn't have time for this banter, and she would ask for it. I strongly resent your intrusion into my business. It means correspondence after correspondence, year after year. And this is money that was to be used for his children, his child support. You know, I just didn't fall off the melon truck. I know people don't want to pay child support if they can help, but I know they resent the ex for that, and that happens. But there's a deal they struck. There's a court order that was entered, and there's a very clear parameter. Was there any – I know he had been a lawyer for a long – you said 35 years? Well, I think it's probably about 36 years now. And he was a partner in a small firm. Correct. And is there any allegation that he had anything to do with setting his income? We sure made the allegation, but there was a problem with proof because the testimony came from him. You know, after 36 years in practice, he was making $76,000. So while we felt it didn't pass the smell test, and he had previously made a lot more money, we had nothing to controvert it. Had he previously made a lot more money? Oh, yeah. Is that in the record? Yes. Okay. And his testimony was his partners, they'd all vote and set his salary, his income. So, I mean, she waited a long time to come back for an increase in support, and she waited a long time to – and put up with it a long time before she filed contempt. But we think the court decision was against the manifest way of the evidence. And any reasonable person looking at this would say, this guy didn't follow the court order real clearly. He surely missed the date. I mean, that's almost in the category of a no-brainer, almost. I don't know how you could say the 15th isn't the 15th, and if it's not done on the 15th, it's not on time. And when it comes to the actual production of it, the information he gave isn't really enough to see if he's telling you the truth. It's not enough. It's just his representation on a piece of paper. For instance, $7,800 he pays himself as a management fee. It doesn't say to whom he pays it. So you look at it and say, well, I want more information. He says, don't meddle in my business. And he doesn't show it as income on his tax return because he doesn't give her the tax return. So she doesn't know that at the time. He just gives her the schedule. So she has no way of knowing it. And it's money that he's able to carve out, not pay child support on, because he says that's what an accounting is. And it's not. Didn't he also say that he had to borrow money to pay some of the college tuition? He said that. But he said he had to borrow from the building. He ended up trading out the building in an exchange that was pretty sophisticated for a divorce case. He traded out the building for vacation condo in southern Wisconsin. And we went into a lot about whether he's claiming the money from that because he said he used it so many days. But he did. He traded the property. Income stopped from there. And basically the child support request was denied. Basically the request for contempt because he didn't follow the court order. It was rejected. And that's what we're saying is against the manifest way of the evidence. Was there an average income figure for that money before the trade? It's tough to say. There were tenants in the property. He said there were tenants out of the property. So I don't know that we ever averaged what it was before. But we did find that there was a change in the net after he charged the management fee. And he said there was some disaster or water disaster that damaged the property that affected it. And he said there were some other things in the economy that doctors weren't going. It was like a doctor community. Thank you very much. Thank you. If it pleases the court, first of all, I think it's important to point out that John paid every dollar of child support he was ordered to pay. John paid every dollar of net income from this rental property towards the boys' college. Put three boys through college, Wheaton College, Washington University. Substantial amounts of money were paid out. Mr. Fahrenkamp asked the question, would any reasonable person believe this is a satisfactory accounting? After all, the man's a lawyer. Well, Judge Sweet was a lawyer for many years, and he's been a judge for a number of years. And he's a reasonable man, and he found that this was perfectly satisfactory as an accounting. And the reason he found that is because here's what the agreement says that they wrote up. Husband shall also provide to wife an annual accounting of all gross income and expenses for his rental property, period. There's no date in there. Mr. Fahrenkamp is trying to work in the first due date of the child support as the date for the accounting. That's it. Now, we write these things up all the time. If we want to put in he has to give an accounting, he has to provide copies of all receipts, he has to provide copies of all checks written for expenses and so forth, we can put that in there. Wouldn't you agree, though, there's a certain level of trust that would have to go along with just looking at an expense itemized and believing that that is an expense? I don't agree with that. I think if you're going to file a Schedule E and submit it to the Internal Revenue Service, that would take care of my question of level of trust. If people are crazy enough to lie to the IRS. Well, generally, you have to show it to your accountant. I mean, they're not generally willing to just say, well, whatever you say. Well, the testimony was that he had a checkbook for the rental property. And he would go through, at the end of the year, the checkbook, and he did his own taxes. And he would prepare from that the Schedule E. And the Schedule E had the income. It had all the expenses, and it had the net income. And that's all that was required. There was not required to be a CPA report, a meeting, you know, standardized accounting standards and so forth. It was, give me a report of the annual gross income, expenses, and net income. And he did that. And if you look at the record, Mr. Fahrenkamp admitted all those Schedule Es as exhibits. And that's what they were. And Judge Sweet found that the court finds that John provided Kathleen with Schedule E of his tax return until the time of the sale of the property in Carroll Stream. Kathleen urges the court to interpret the agreement to mean that he should have received, she should have received additional or other documents. There is no such requirement in the agreement. Plain and simple. What about the contention that his management fee wasn't even shown as income, and there was no way to tell who the management fee was being paid to? Again, there was nothing in the agreement that prohibited him, would prohibit him from taking a management fee. I'm aware of that. I'm just saying that, you know, everyone does know that there's a lot of mistrust in, rightfully so, in a divorce, because usually they're not an amiable situation. And that verification of an expense certainly would go a long way to helping both parties believe that something is correct. And I agree completely. And in those cases, we write it up. We'll put in a whole paragraph. We'll put in a date by which the report has to be made. We'll put in a date or put in specifics as to what has to be provided. Well, an accounting, you know, seems to me to be something different than a Schedule E. I mean, they didn't put in there that a Schedule E, if he would provide the Schedule E every year, that would be. But his testimony was that was his only accounting. He didn't have an accountant that kept a set of books. No, no, no. He does an accounting by virtue of preparing for the Schedule E, in which he presumably has proof that he has paid such and such expense by either a receipt or a canceled check. The undisputed testimony of trial was that he maintained a checkbook that he used strictly for this rental building. And at the end of the year, he would take the checkbook, he would sit down, and he would prepare the Schedule E, and he provided the Schedule E to his ex-wife. Was the checkbook ever provided? I don't know. I don't think so. I think it was just the Schedule E's. But the judge heard the testimony. We did this for two days. The judge heard the testimony, what her complaints were, what John said he did and how he did it. He looked at the exhibits and looked at what they had agreed to and said a Schedule E that listed the gross income, expenses, and net income was fully compliant with what they had agreed to. And that was it. You know, and as I say, Mr. Fahrenkamp used those as his exhibits at trial to show what the incomes were and were not. As far as John's income from his law firm, the undisputed testimony was that there were five shareholders or five partners. They voted on it. We presented at trial the income history. We presented at trial proof that there had been no bonuses declared since 2006. All of that evidence was in there. All of that evidence was undisputed. And based upon that, the judge found, I mean, John was working at the same law firm, doing the same thing. He showed where his income had gone up and then gone down. He was not in control of his income. And based upon that, Judge Sweet found there's been no substantial change that would warrant an increase in the child support. Was the question ever asked what the checks were? You said you don't know. Was there ever a question asked about the checks? I don't believe there was. I mean, we had an awful lot of documents in this, and I would be not. Were they all admitted or evidence they are in the file? I don't know what the record shows. Substantial record. I can't tell the court if the checkbook was copied and put in there. There were reams of tax returns, reams of Schedule E's, reams of bank records. I mean, we had a box of bank records like this that ultimately were not used. But I can't tell you honestly if the checkbook was actually copied. I know there was substantial testimony about it. Again, I can't tell you off the top of my head if it was an exhibit. Well, the checks would show who it was paid to. Was the management fee paid to him or was it paid? When the management fee was paid, he was charging it himself. Okay, so it was coming to him. It was. But there was nothing that prohibited that. No, I didn't say that. I just wanted to know what was he in the record. No, he was the manager. And so you know what the story was because we touched on it. This was a medical community where all the doctors had little offices there. And when John bought the building, it was rented out to a couple of doctors. The hospital built a big medical building four blocks away and encouraged all their doctors to move there. So when John sold it, the market had tailed off. But, again, as Judge Sweet found, this building was awarded to John. And John could do whatever he wanted with it. He did use the net income. And there were six, seven, or eight years that there was net income that came out of this that went straight to the college. And there was never net income because these were expensive private schools. There was never net income beyond the college that would have been included for child support. And you can't look at the income from the building for child support because they had a separate agreement that it would be used for college. And then only after college if there was excess. So Mr. Fahrenkamp's argument that we should look at the gross receipts or the gross revenues of the building is completely contradicted by the agreement these people reached. The agreement they reached was we're going to take the net income from this building, apply it to these three boys going to college, and then if there's money left over, and for- But the gross is where you began. But the question is what was the true net? The true net was reflected on the Schedule E's that he submitted to the Internal Revenue Service. I mean, again, Judge, this is an intelligent man, a practicing attorney. He's not going to lie to the IRS. And there was never an issue raised that these were not truthful Schedule E's. You're not saying that he was dishonest with the IRS. Certainly there are ways that you can show expenses that benefit one party versus the other and still be within the IRS guidelines. I agree. And if that were an issue, then they should have put it in, you know, the agreement that we're not going to go with IRS net revenue. We're only going to allow you to deduct this, this, and this. They didn't say that. And what Judge Sweet was required to do was look at the agreement that these people reached and determine if there was compliance with that agreement. And he looked at it and said there was. And I don't think there's any way to say, based on the evidence and the testimony that was not disputed as to how this was handled, that that was against the manifest way of the evidence. Thank you very much. Thank you. Just to clarify, the order, handwritten, and it's at A-19 on the appendix, says that these additional child support payments shall be made by February 15th. Well, you can't make a payment of excess unless you do the accounting before then. So in a way it begs the question to say it really didn't say have it by the 15th. You don't know what it is until the accounting is done, and the accounting has to be done so the payments can be made by February 15th. So it would be unusual to say that the accounting is due after you have to pay the money. The second part, and there's some reference to that John was paying all these amounts for college. The reason that the kids were getting most of their college paid, and this is at A-37 it looks like, but it's my Exhibit 15, is that my client filed, and because of her income, on the FAFSA. They got a lot of aid. As a matter of fact, the boys who went to Wheaton and Wash U had almost a full ride. So it wasn't as though there was a lot of massive money coming out from John, and he really had to pay it. We don't have those bills. We don't know what he paid. So even at step two. Was there a discovery request for those? Yes. And that was never complied? There were things, some things were provided, some weren't. And it was at that point we wanted to go forward and get. So he never did. I'm sorry. I want to ask one question that I should have asked Mr. Steiger, and I'm sure that it's probably in the record. Because I remember, I think, reading in one of the briefs that Mr. Westra is the one that prepared the agreement, the marital agreement. So it was his work. Correct. And I think the handwriting, as I recall, I think the handwriting here is his as well, which is the provision. And it does say that he's entitled to a credit for college expenses. But how does she know how much a credit is? I mean, Mr. Westra doesn't have to file a false tax return. He can make a mistake in his taxes. And maybe he mistakenly believed that income he pays himself at Schedule E at A101 in our exhibit, 7,587, doesn't have to appear as income on A91. Maybe it's clear to us. That will be clear to us. Oh, sure. You can look at A91 and see that that income isn't declared on there as a separate income. He shows wages at $88,440. But he doesn't show any other. And it is clear that he paid himself rather than somebody else. The testimony was that he paid himself. And the exhibits say he paid himself. One exhibit I think I mentioned earlier said that he did it because he had to take a loan out to pay her lawyer fees. And so, I mean, he was pretty bold in saying this. I think it's Petitioner's Exhibit 23 with A45 in the record. I've already addressed management fees. Frankly, I need additional income to pay back the loan I had to incur to pay your lawyer, Costelny, for the last go-round. So, I mean, he admitted. Sometimes reasonable judges make a decision that's against the manifest way of the evidence. And that's why we have appellate courts. If we said every judge was reasonable at all times, there would be no need for appellate review. But there is. And there is review. And I think this case is one in which it's pretty clear that Mr. Westra ignored the order. And he didn't care. And he got by with it for a number of years. So, we believe that the decision of Judge Sweet should be reversed. And he should be found in contempt. And he should be ordered to pay attorney fees and all the things that go with a willful contempt. Thank you. Okay. We'll be taking a break.